# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARRIS GROUP, INC.,

    Plaintiff,

v.

BRITISH TELECOMMUNICATIONS PLC,

    Defendant.

CIVIL ACTION

NO. 1:09-CV-671-CAP

**O R D E R**

This matter is before the court on the defendant's motion to dismiss for lack of subject matter and personal jurisdiction [Doc. No. 17] and the plaintiff's motion for jurisdictional discovery [Doc. No. 30]. On February 18, 2010, the court granted the defendant's motion to dismiss for lack of subject matter jurisdiction [Doc. No. 17] but did not address the defendant's arguments regarding personal jurisdiction; the court also dismissed as moot the motion for jurisdictional discovery [Doc. No. 30]. On March 12, 2010, the plaintiff filed a notice of appeal [Doc. No. 51]. On May 19, 2011, the United States Court of Appeals for the Federal Circuit reversed this court's dismissal of this case for lack of subject matter jurisdiction and remanded the case to this court. On May 26, 2011, the court entered an order making the Federal Circuit's mandate the judgment of this court [Doc. No. 58]. The court will now address the defendant's motion to dismiss for

lack of personal jurisdiction [Doc. No. 17] and the plaintiff's motion for jurisdictional discovery [Doc. No. 30].

## I.  Factual Background

In the interests of judicial economy, this court adopts the factual background set forth by the Federal Circuit on appeal:

> The patents-in-suit claim systems and methods that relate in particular to cable networks that offer Voice over Internet Protocol ("VoIP") telephone services. Plaintiff[] Arris develops and manufactures cable telephony and data products for cable system operators for use in VoIP systems. This declaratory judgment action stems from BT's allegations that Cable One, Arris' customer, has infringed the patents-in-suit by using equipment purchased from Arris to implement VoIP services on Cable One's network.
>
> VoIP is a communications protocol under which voice data is transmitted over a packet-switched network such as the internet, rather than over the traditional Public Switched Telephone Network ("PSTN"). To originate a VoIP telephone call, the analog voice signal must first be digitized and encoded into packets. In Cable One's network, this essential function is performed by devices sold by Arris known as Embedded Multimedia Terminal Adapters ("E-MTAs"). An E-MTA is a user-end device that combines a Cable Modem ("CM") and a Multimedia Terminal Adapter ("MTA") to allow for the connectivity of both Ethernet-compatible devices and traditional analog telephones. The MTA converts the telephone's analog voice signal into digital IP packets, delivers a dial tone, and manages other essential call functions.
>
> In addition to E-MTAs, Cable One's VoIP network uses other Arris products known as Cable Modem Termination Systems ("CMTSs"). A CMTS is an electronic device, typically used at a cable company's head-end or hub-site, which communicates with multiple subscribers' cable modems and routes traffic to and from the internet. The use of CMTSs in Cable One's network is essential to the functionality of its VoIP services. Cable One's network

and Arris' CMTS and E-MTA products all operate in accordance with the industry standards of (1) Data Over Cable Service Interface Specification ("DOCSIS"), which defines interface standards for cable modems and supporting equipment; and (2) PacketCable, which is an extension of DOCSIS used for VoIP.

On July 17, 2007, BT sent a letter to Cable One that accused Cable One's VoIP network of infringing various claims of the patents-in-suit and sought to begin licensing negotiations. The specified claims included both system and method claims. In response to BT's letter, Cable One requested on August 15, 2007, that it be provided a "specific comparison of the claims of [the patents-in-suit] to our cable systems or operations." On August 23, 2007, BT sent Cable One a 118-page presentation showing "the applicability of selected claim elements in the four BT patents to Cable One's services." The presentation specifically and repeatedly identified Arris' CMTSs and E-MTAs used in Cable One's network as embodying numerous elements and performing numerous method steps of the asserted claims. BT and Cable One subsequently met on October 23, 2007, at Cable One's offices in Phoenix, Arizona, where BT reviewed the 118-page presentation and further explained its infringement contentions.

Following the October 23 meeting, Cable One sent a letter to Arris in November 2007 notifying Arris of BT's infringement accusations. Cable One additionally demanded in the letter that Arris "defend, indemnify and hold harmless Cable One from these assertions of infringement."

On January 18, 2008, BT "proposed . . . a face-to-face meeting with Cable One and its vendors . . . to determine if we have a basis for further licensing negotiations." In late February 2008, Cable One requested that Arris be included in the next meeting. The meeting was held on March 14, 2008, at Arris' office in Suwanee, Georgia. During the meeting, BT presented the same 118-page presentation of BT's infringement contentions that it had presented to Cable One at the Phoenix meeting.

3

> The parties – including Arris – met again at Arris' Suwanee office on August 29, 2008, where they discussed potential licensing for Cable One. At the meeting, Arris presented a response to BT's infringement contentions. Arris contended that certain relevant claim limitations were not met by Arris' CMTS or E-MTA products used in Cable One's network.
>
> Following the August meeting, BT requested that Arris send "formal rebuttal information" regarding its infringement contentions, and it further requested a telephone conference with the parties' "technical people." On September 17, 2008, Arris sent BT further materials containing its non-infringement arguments, seeking to absolve Cable One of infringement by demonstrating how components within Cable One's network did not meet one or more of the limitations in the claims-at-issue. Two conference calls took place thereafter on September 24, 2008, and November 13, 2008, during which Arris presented its non-infringement arguments and BT responded to them.
>
> On November 24, 2008, BT requested that both Arris and Cable One agree to receive a specific licensing proposal under the terms of a nondisclosure agreement BT had entered into with Cable One. Arris and Cable One agreed, and on December 15, 2008, BT sent copies of its licensing proposal to both parties. The proposed licensing agreement explicitly stated that the license would be "granted to Cable One only." No license agreement was consummated.
>
> On March 31, 2009, Arris filed this declaratory judgment action in the United States District Court for the Northern District of Georgia, seeking: (1) a declaration that Arris does not infringe the patents-in-suit; (2) an injunction preventing BT from instituting infringement actions against Arris or its customers; and (3) a declaration that the patents-in-suit are invalid.

<u>Arris Group, Inc. v. British Telecommunications PLC</u>, 639 F.3d 1368, 1371-73 (Fed. Cir. 2011) (citations omitted).

4

**III. Motion to Dismiss - Personal Jurisdiction [Doc. No. 17]**

**A.  Legal Standard**

A court's exercise of personal jurisdiction, at a minimum, must comport with due process. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011) (citing International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). "Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State." Id. Thus, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Id. An assertion of jurisdiction is proper where a plaintiff succeeds in establishing a case for either general or specific jurisdiction over the defendant.

As to a non-consenting, non-resident defendant, the court must consider a two-part test when evaluating specific jurisdiction: (1) whether the applicable state long-arm statute is satisfied, and (2) whether the exercise of personal jurisdiction is consistent with

5

the due process clause. See Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006). As to the first part of the test, the Georgia long-arm statute, O.C.G.A. § 9-10-91, allows jurisdiction over a non-resident defendant where the cause of action arises out of a non-resident's transaction of business within Georgia. Diamond Crystal Brands, Inc. v. Food Movers International Inc., 593 F.3d 1249, 1264 (11th Cir. 2010). As to the second part of the test, the issue of personal jurisdiction in a declaratory judgment action for non-infringement is governed by Federal Circuit law regarding due process. Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003). The Federal Circuit applies a three-prong test to determine if the exercise of personal jurisdiction over a defendant satisfies the requirements of due process, considering whether: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Breckenridge, 444 F.3d at 1363. As to the third prong of this test, "the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction

unreasonable' under the five-factor test articulated by the Supreme Court in Burger King.[1]" Id.

In this case, because the parties have not conducted discovery, the plaintiff must only make a *prima facie* showing that the defendant is subject to personal jurisdiction. See Avocent Huntsville Corp. v. Aten International Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (citing Silent Drive, 326 F.3d at 1201). "[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the plaintiff's favor." Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

---

[1] Those five factors are: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social problems. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985).

7

B.  Analysis

i.  General Jurisdiction

The court will first consider whether the plaintiff has made a *prima facie* showing that the court has general jurisdiction over the defendant. The plaintiff does not contend that the defendant itself has continuous and systematic contacts to support general jurisdiction over the defendant in Georgia. Instead, the plaintiff contends that this court's general jurisdiction can be based on the activities of the defendant's subsidiaries in Georgia. The plaintiff contends that the defendant's subsidiaries effectively operate as mere divisions of the defendant with no separate corporate interests of their own.

The court finds that the defendant does not have systematic and continuous contacts with Georgia to justify the exercise of general jurisdiction. There is no question that at least some of the defendant's subsidiaries have continuous and systematic contacts with Georgia. However, it is well recognized that companies will not be subjected to personal jurisdiction in every state in which their subsidiaries conduct business. Consolidated Development Corp. v. Sherrit, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000). Companies that respect corporate formalities between the parent and its subsidiaries will not be haled into jurisdictions where the parent does not conduct business. Id. In this case, the

8

record evidence establishes that the defendant respects its corporate form. The defendant and its subsidiaries share no common officers or directors, and the defendant maintains a separate corporate existence from its subsidiaries by adhering to corporate formalities. Additionally, the defendant's subsidiaries file their own tax returns, and the defendant maintains its own bank account separate and apart from its subsidiaries. Finally, the defendant properly documents all financial transactions with its subsidiaries and ensures these transactions occur on an arm's-length basis with reasonable commercial terms. Thus, the defendant exerts no more control over its subsidiaries than one would expect from a parent-subsidiary relationship, and the contacts of the defendant's subsidiaries cannot be imputed to the defendant to establish general jurisdiction.

### ii.  Specific Jurisdiction

The court will now consider whether the plaintiff has made a *prima facie* showing that the court has specific jurisdiction over the defendant. Where a defendant is not subject to general jurisdiction in the forum state, a district court may still exercise specific jurisdiction over the defendant. The court must consider a two-part test when evaluating specific jurisdiction: (1) whether the applicable state long-arm statute is satisfied, and (2)

whether the exercise of personal jurisdiction is consistent with the due process clause. See Breckenridge, 444 F.3d at 1361.

The Georgia long-arm statute, O.C.G.A. § 9-10-91, allows jurisdiction over a non-resident defendant where the cause of action arises out of a non-resident's transaction of business within Georgia. Diamond Crystal Brands, Inc. v. Food Movers International Inc., 593 F.3d 1249, 1264 (11th Cir. 2010). In considering whether a Georgia court may exercise jurisdiction over a non-resident based on transaction of business under the long-arm statute, "jurisdiction exists . . . if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts [] does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 739 (Ga. Ct. App. 2006). "Factors such as regularly doing or soliciting business, or deriving substantial revenue from goods or services" in the state are relevant when determining whether the court has specific jurisdiction "where such activities relate to the suit at hand." Id. at 737. The court finds that the plaintiff cannot establish that the defendant "transacted business" in Georgia. The defendant's contacts with Georgia were limited to a few instances of its licensing

negotiations with Cable One, and these instances are insufficient to establish that the defendant transacted business in the state.

Even if the court were to find that the Georgia long-arm statute is satisfied, the exercise of specific jurisdiction over the defendant is inconsistent with due process. In Hildebrand v. Steck Manufacturing Co., Inc., 279 F.3d 1351, 1355-56 (Fed. Cir. 2002), the Federal Circuit recognized that negotiations by themselves cannot give rise to specific jurisdiction over a declaratory judgment patentee because failed negotiations alone do not create continuing enforcement obligations in that forum. However, the court recognizes that the Federal Circuit has held that in combination with cease-and-desist communications, other activities in the forum state can give rise to specific jurisdiction. See, e.g., Breckenridge, 444 F.3d 1366-67 (holding that entry into an exclusive license with an entity in the forum state is sufficient extra activity to establish jurisdiction); Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (holding that the court had specific jurisdiction over a patentee that had contracted with an exclusive distributor to sell the patented products in the state); Viam Corp v. Iowa Export-Import Trading Co., 84 F.3d 424, 430 (Fed. Cir. 1996) (holding that the court had personal jurisdiction when the defendants initiated a suit seeking to enforce the same patent

11

against other parties in the same district court); Akro Corp. v. Luker, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995) (holding that exclusive licensing of the accused infringer's competitor in the forum state constituted "additional activity" sufficient to warrant the exercise of personal jurisdiction).

The court relies upon Autogenomics, Inc. v. Oxford Gene Technology Ltd., 566 F.3d 1012 (Fed. Cir. 2009), in which the Federal Circuit held that specific jurisdiction was inappropriate in a declaratory judgment action brought against a British patentee, in finding that the exercise of specific jurisdiction is inappropriate in this case. In Autogenomics, the patentee's contacts with the forum consisted of licensing negotiations between the patentee and the declaratory judgment plaintiff, communications via email and phone, and a meeting in the forum state. Id. In addition, the patentee had approximately ten non-exclusive licenses with California residents (at least one being for the patent-in-suit), had a collaborative agreement with a California resident (not related to the patent-in-suit), had attended multiple conferences in the forum relating to the patent-in-suit's technology, and had sales to California residents that comprised 1% of its total sales. Id. In Autogenomics, the patentee had far greater contacts with the forum than the patentee in this case, but

the Federal Circuit affirmed the district court's dismissal of the action for lack of personal jurisdiction.

This case is also distinguishable from Campbell Pet Co. v. Miale, 542 F.3d 879, 886 (Fed. Cir. 2008), in which the Federal Circuit held that attempts at "extra-judicial patent enforcement" by harming the plaintiff's business activities in the forum state is a sufficient additional factor to justify the exercise of personal jurisdiction. In Campbell Pet, the patentee informed the declaratory judgment plaintiff and its customers that its products might infringe her patents. Id. However, the patentee also tried to have the allegedly infringing products removed from a trade show. Id. In this case, the defendant did not take such dramatic steps toward enforcement of its patent rights in the forum state.

The court finds that the defendant's actions towards Cable One and Arris, although sufficiently direct and repetitive to indicate there is a dispute between the parties as to Arris' liability for contributory infringement that is sufficient to give rise to this court's subject matter jurisdiction, do not constitute sufficient "other actions" to give rise to this court's specific personal jurisdiction over the defendant.

**III. Motion for Jurisdictional Discovery [Doc. No. 30]**

The plaintiff filed a motion for jurisdictional discovery [Doc. No. 30] that asked for leave to take jurisdictional discovery

13

in the event the court found insufficient facts had been presented to establish personal jurisdiction. The court finds that the plaintiff did not make a showing that further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction. Instead, the categories of potential discovery identified in the plaintiff's motion and proposed order are generic and encompass the entire scope of disputes over personal jurisdiction. The plaintiff has already presented a substantial amount of evidence from within these broad categories and has failed to identify what specific additional information it hopes to learn through discovery that it has not already provided to the court. Jurisdictional discovery is not a vehicle for a "'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." Parker v. Brush Wellman, Inc., 377 F.Supp.2d 1290, 1305 (N.D. Ga. 2005). As such, the plaintiff's motion for jurisdictional discovery [Doc. No. 30] is DENIED.

### IV. Conclusion

For the reasons set forth above, the plaintiff's motion for jurisdictional discovery [Doc. No. 30] is DENIED. As the plaintiff has failed to make a *prima facie* showing of this court's jurisdiction over the defendant, the defendant's motion to dismiss [Doc. No. 17] is GRANTED. The pending motion to transfer, motion

to dismiss, or motion to stay [Doc. No. 82] is DISMISSED as MOOT.

The clerk is DIRECTED to close this action.

SO ORDERED, this 10th day of August, 2011.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

# EXHIBIT B

## Boehnen, Daniel

| | |
|---|---|
| **From:** | ganddb_efile_notice@gand.uscourts.gov |
| **Sent:** | Wednesday, August 10, 2011 2:00 PM |
| **To:** | CourtMail@gand.uscourts.gov |
| **Subject:** | Activity in Case 1:09-cv-00671-CAP Arris Group, Inc. v. British Telecommunications PLC Terminated Case |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

## Northern District of Georgia

### Notice of Electronic Filing

The following transaction was entered on 8/10/2011 at 2:59 PM EDT and filed on 8/10/2011
**Case Name:**   Arris Group, Inc. v. British Telecommunications PLC
**Case Number:**   1:09-cv-00671-CAP
**Filer:**
**WARNING: CASE CLOSED on 08/10/2011**
**Document Number:** No document attached

**Docket Text:**
**Civil Case Terminated. (jtj)**


**1:09-cv-00671-CAP Notice has been electronically mailed to:**

Daniel A. Boehnen     boehnen@mbhb.com

Eugene L. Chang     echang@willkie.com, mao@willkie.com

Henry Milton Quillian , III     hquillian@taylorenglish.com, askeete@taylorenglish.com

Jeffrey C. Morgan     jeffrey.morgan@troutmansanders.com, pamela.kozlowski@troutmansanders.com

Jerry Chieh Liu     jerry.liu@arrisi.com

John Michael DiMatteo     jdimatteo@willkie.com

1

Ketan Pastakia     kpastakia@willkie.com

Trenton Andrew Ward     trenton.ward@troutmansanders.com

**1:09-cv-00671-CAP Notice has been delivered by other means to:**

Daniel M. Burstein
Willkie Farr & Gallagher LLP-NY
787 Seventh Avenue
New York, NY 10019-6099

Grantland G. Drutchas
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

Marc E. Montgomery
Willkie Farr & Gallagher LLP-NY
787 Seventh Avenue
New York, NY 10019-6099